

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CHARLES ROBINSON,

          Plaintiff,

  -against-

KEYSPAN,

          Defendant.
-------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 03-CV-4796 (FB) (LB)

*Appearances:*
*For the Plaintiff:*
KENNETH W. RICHARDSON, ESQ.
305 Broadway, Suite 1100
New York, New York 10007

*For the Defendant:*
PHILLIP R. SCOTT, ESQ.
SHANELL PARRISH-BROWN, ESQ.
KeySpan Corporation
Office of General Counsel
One MetroTech Center
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

      Plaintiff, Charles Robinson ("Robinson"), asserts claims of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); 42 U.S.C. § 1981 ("§ 1981"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290-301 ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-703 ("NYCHRL"). Robinson, who is black and of Guyanese national origin, alleges that defendant, KeySpan Corporation ("KeySpan"),[1] discharged him based on his race and national origin; he also alleges that, during his employment, he was subjected to a hostile work environment.

---

[1] Although the defendant is named in the caption as "KeySpan," there is no dispute that "KeySpan Corporation" is the defendant's full corporate name.

Pursuant to Federal Rule of Civil Procedure 56, KeySpan moves for summary judgment. With respect to the discriminatory discharge claim, KeySpan argues (1) that Robinson has failed to make out a *prima facie* case; and (2) that, even if he could establish a *prima facie* case, he has failed to establish that KeySpan's non-discriminatory reason for his discharge was pretextual and that the real reason was based on his race or national origin. With respect to the hostile environment claim, KeySpan argues that Robinson has failed to demonstrate the existence of a hostile environment. For the following reasons, the Court grants the motion.

## BACKGROUND[2]

### I.

In 1989, Robinson began working for ConEdison as a welder at the Ravenswood Power Plant ("Ravenswood"). In 1999, KeySpan purchased that facility from ConEdison and retained Robinson as a welder.

Robinson reported directly to a number of supervisors, including Donald

---

[2]The background is taken from KeySpan's Statement of Undisputed Material Facts, *see* Local Rule 56.1(a), the affidavits and other documents supporting it, and Robinson's affidavit in opposition. Although represented by counsel, Robinson failed to submit a responsive Rule 56.1 statement. *See* Local Rule 56.1(b). Normally, "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party," Local Rule 56.1(c); however, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (applying principle to Local Rule 56.1). Exercising that discretion, the Court will not deem facts in KeySpan's statement admitted to the extent they are contradicted by Robinson's affidavit. Thus, the facts presented above are either undisputed or, if disputed, stated in the light most favorable to Robinson.

Blanchflower ("Blanchflower") and Joseph Strain ("Strain"). Different supervisors worked different shifts; Robinson reported to whichever supervisor was on duty during his shift. At all relevant times, Joseph Vignola ("Vignola") was the plant manager in charge of "overall management and operational oversight" of Ravenswood, Vignola Aff. ¶ 2, and Robert Greenbaum ("Greenbaum") was KeySpan's Director of Employee and Labor Relations.

KeySpan maintains a written, zero-tolerance policy on theft, under which any employee caught taking company property for non-company use is to be terminated. Between May 1986 and June 2002, KeySpan discharged 15 employees pursuant to that policy; of those discharged, 12 were white, two were black and one was Hispanic.

On June 29, 2002, one of Robinson's co-workers reported to Strain – the supervisor on that shift – that he had seen Robinson put two full five-gallon water bottles in his truck; the water bottles were company property. After personally observing the bottles in Robinson's vehicle, Strain instructed Robinson to return them to their proper storage area; Robinson complied.

On July 2, 2002, Robinson was told to report to Vignola's office, whereupon Vignola told him that he was being investigated for theft of the water bottles. The parties dispute the specifics of Robinson's response when asked why he had taken bottles. According to Vignola, Robinson stated that he had taken them "for his personal use" to give to "contractors [working] at his and/or his mother's home." Vignola Aff. ¶¶ 14-15. Robinson agrees that he told Vignola that the water was for personal use, but attests that, by "personal use," he meant that he "intended to consume the water [on the premises]"

and that "[t]he remaining water was to be stored in the welder's shop for use by the employees for drinking and making coffee," Robinson Aff. ¶¶ 20, 25; he admits, however, that he did not offer this explanation to Vignola.

Following the July 2 meeting, Robinson was suspended pending further investigation. Vignola then informed Greenbaum of the incident. After reviewing Vignola's investigation, Greenbaum decided to discharge Robinson; on July 17, 2002, Robinson received a letter from Greenbaum informing him of the termination of his employment. It is undisputed that only Greenbaum, Vignola and Strain (as the supervisor who observed the water bottles) were involved in the termination decision.

Robinson's employment was subject to the terms and condition of a collective bargaining agreement ("CBA") between KeySpan and his union, which grieved his termination. When KeySpan rejected the grievance, the matter was referred to a neutral arbitrator pursuant to the CBA. On April 24, 2003, the arbitrator held a hearing; on May 16, 2003, he found that KeySpan "had just cause to discharge Robinson on July 17, 2002." Greenbaum Aff., Ex. B.

On October 21, 2002, prior to the arbitration hearing, Robinson had filed a charge with the New York State Division of Human Rights ("DHR"). On June 16, 2003, the DHR found no probable cause to believe that KeySpan had discriminated against Robinson; on August 4, 2003, the Equal Employment Opportunity Commission ("EEOC") adopted the DHR's finding and gave Robinson notice of his right to sue in federal court. On September 17, 2003, Robinson filed a *pro se* complaint in this Court; on July 23, 2004, Robinson, now represented by counsel, filed an amended complaint.

4

## II.

Robinson's amended complaint alleges (1) that he was discharged on the basis of his race and national origin, and (2) that, prior to his discharge, he was subjected to a hostile work environment. He offers the following in support of his claims:

- On September 17, 2001, Blanchflower assigned him to "cut and replace two high pressure values on [a] boiler roof," which Robinson described as "a very hot area." Robinson Dep. at 76-78. Blanchflower also assigned Bob Jenkins ("Jenkins") and Paul Stath ("Stath") to work with Robinson on the assignment. Jenkins is black; Stath is white.

- On September 24, 2001, Blanchflower sent Robinson and Jenkins to be retrained in welding after the welds on a job on which they had worked with two white welders failed inspection. Blanchflower did not send the white workers to retraining, even though one of them had done the substandard welding.

- On October 10 and October 16, 2001, Blanchflower told Robinson "your type, black West Indians, came to this country on banana boats and are taking away White American jobs." Robinson Aff. ¶ 9.

- "Private contractors regularly stored company water in their vehicle and actually took the water off the plant grounds. They are predominantly white but no action has ever been taken by Keyspan against them." *Id.* ¶ 33.

## DISCUSSION

Discrimination claims are subject to the usual rules regarding summary judgment, under which a court must grant summary judgment "whenever it determines that there is no genuine issue of material fact to be tried." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

In considering a motion for summary judgment, the court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 255). Where, however, the non-moving party bears the burden of proof at trial, the moving party need only "'show[]' – that is, point[] out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Upon such a showing, "the non-moving party must respond with 'specific facts showing that there is a genuine issue for trial,'" *Golden Pac. Bancorp. v. FDIC*, 375 F.3d 196, 200 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)); conclusory statements, conjecture and other types of unsupported assertions are not sufficient. *See Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14 (2d Cir. 1995).

As the Second Circuit has recently observed, summary judgment in a discrimination case should be granted with caution "because 'smoking gun' evidence of discriminatory intent is rare and most often must be inferred." *Forsyth v. Federation Employment & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005). Summary judgment is nevertheless appropriate when "the moving party has submitted facts sufficient to show that the non-moving party's claim has no merit, and the non-moving party's attempts to rebut the movant's facts consist only of 'mere allegations or denials' of the facts asserted by the movant." *Id.* at 570 (quoting Fed. R. Civ. P. 56(e)).

### I. Discriminatory Discharge

A claim of discriminatory discharge is analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). *See also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The *McDonnell Douglas*

6

analysis applies whether the claim is based on Title VII, § 1981, the NYSHRL or the NYCHRL. *See Taitt v. Chemical Bank*, 849 F.2d 775, 777 (2d Cir. 1988) (Title VII and § 1981); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) (Title VII, NYSHRL and NYCHRL).

First, the plaintiff must establish a *prima facie* case of unlawful employment discrimination by showing that he or she (1) was a member of a protected class, (2) was qualified for his or her position, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93 (2d Cir. 2001). If a *prima facie* case has been established, "the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions." *Id.* at 138. If the defendant does so, then the plaintiff "must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253). At this stage, the plaintiff must demonstrate not only that the employer's proffered reason was false, but that the real reason was unlawful discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) ("That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race is correct."). In this regard, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148.

In sum, "once the defendant has made a showing of a neutral reason for the complained of action, 'to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305 (2d Cir. 1997)). Whether the plaintiff can satisfy that burden in a particular case depends on a number of factors, including "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148-49

### A. *Prima Facie* Case

It is undisputed that Robinson is a member of a protected class and that he suffered an adverse employment action, namely, discharge. The Court also assumes, but does not hold, that Robinson was qualified for his position. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (holding that to satisfy qualification element of *prima facie* case "plaintiff must show only that he [or she] possesses the basic skills necessary for performance of [the] job." (internal citation and quotation marks omitted)).

Robinson fails to make out a *prima facie* case of employment discrimination because he cannot establish that his discharge occurred in circumstances giving rise to an inference of discrimination on the basis of race or national origin. With one exception, the evidence Robinson offers to support his claim consists of incidents involving Blanchflower;

Robinson does not contend, however, that Blanchflower either made the termination decision or was involved in the decision-making process. *See Ellis v. Provident Life & Acc. Ins. Co.*, 926 F. Supp. 417, 428 (S.D.N.Y. 1996) ("Inferences of intentional discrimination may not be based on 'statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself[.]'" (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring))); *Chang v. Safe Horizon*, 2005 WL 2125660, *7 (S.D.N.Y. Sept. 1, 2005) ("Actions by an individual not involved in the adverse employment decision at issue do not give rise to an inference of discrimination." (citing *McLee v. Chrysler Corp.*, 109 F.3d 130, 137 (2d Cir. 1997))). Robinson has offered no evidence that those involved in that decision – Greenbaum, Vignola and Strain – were motivated by any discriminatory animus.

Robinson also relies on the statements in his affidavit that "[p]rivate contractors regularly stored company water in their vehicle and actually took the water off the plant grounds," and that those contractors "are predominantly white but no action has ever been taken by Keyspan against them." Robinson Aff. ¶ 33. Robinson asks the Court to conclude that this disparate treatment gives rise to an inference of discriminatory discharge. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("A plaintiff may raise such an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group.").

Such a conclusion is problematic for several reasons. First, Robinson provides no details about the "private contractors" or how often and under what

9

circumstances they took bottles of water off the premises. Thus, he fails to demonstrate that the contractors took the water "for personal use" as he admittedly did. Moreover, Robinson does not attest that KeySpan had ever caught any contractors taking water off the premises. Unless KeySpan was aware of the contractors' actions, it is impossible to ascribe its lack of response to discriminatory animus.

Finally, and most importantly, to justify an inference of discrimination from disparate treatment, "the plaintiff must show [he or] she was 'similarly situated in all material respects' to the individuals with whom [he or] she seeks to compare [himself or] herself." *Graham*, 230 F.3d at 39 (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997)). Whether a plaintiff satisfies this test depends on "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id.* at 40.

Robinson has offered no evidence that contractors working for KeySpan were subject to the same zero-tolerance policy against theft as KeySpan employees. *Accord Barbour v. United Beechcraft, Inc.*, 1998 WL 80417, *6 (N.D. Ill. Nov. 10, 1998) (holding that independent contractor and plaintiff-employee "are simply not similarly situated and it is impossible to compare the two"). Nor has Robinson offered any evidence that those responsible for his discharge had any authority – disciplinary or otherwise – over contractors. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) ("[W]hen different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects." (internal citations and quotation marks omitted)). Consequently,

Robinson has not demonstrated that he and the contractors he compares himself to were similarly situated in all material respects.

**B. Pretext**

Even assuming that Robinson could make out a *prima facie* case, his discriminatory discharge claim would still fail. KeySpan has come forward with a non-discriminatory reason for Robinson's discharge, namely, its determination that he violated KeySpan's zero-tolerance policy against taking company property for non-company use. This proffered reason is supported by the results of KeySpan's investigation and its longstanding, consistent and even-handed enforcement of the policy. Thus, to survive summary judgment, Robinson must demonstrate that KeySpan's proffered reason was a pretext for unlawful discrimination

Robinson's burden is made heavier because, after the grievance hearing, a neutral arbitrator concluded that KeySpan had just cause to discharge Robinson; this fact is "highly probative of the absence of discriminatory intent." *Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002). In the face of such a decision, a plaintiff "must present strong evidence that the decision was wrong as a matter of fact – e.g. new evidence not before the tribunal – or that the impartiality of the proceeding was somehow compromised." *Id.* Robinson offers no such evidence.

Even without the increased burden imposed by the arbitrator's decision, Robinson has not adduced sufficient evidence of pretext. As he did for his *prima facie* case, he relies solely on the incidents involving Blanchflower and his contention that KeySpan took no action against contractors who took water off the premises. With regard to the

11

former, just as the discriminatory animus of non-decision-makers does not give rise to an inference of discrimination on the part of decision-makers, "derogatory remarks made by nondecisionmakers with no connection to an alleged adverse employment decision cannot support a reasonable inference of pretext." *Cardenas v. AT&T Corp.*, 245 F.3d 994, 1000 (8th Cir. 2001). With regard to the latter, although a showing that those similarly situated to the plaintiff were treated more favorably can, in addition to supporting a *prima facie* case of discrimination, "also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination," *Graham*, 230 F.3d at 43, Robinson has not offered, as previously explained, any evidence that he and the contractors were similarly situated in all material respects.

In sum, no reasonable fact-finder could conclude that KeySpan discharged Robinson because of his race or national origin. KeySpan is therefore entitled to summary judgment on Robinson's discriminatory discharge claim.

## II. Hostile Environment

To survive a motion for summary judgment, a plaintiff alleging a hostile work environment claim must come forward with sufficient evidence to show (1) the existence of hostile environment, and (2) "a specific basis ... for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). KeySpan argues that Robinson has failed to make the first showing. The Court agrees.

The standard for demonstrating the existence of a hostile environment under Title VII, § 1981, the NYSHRL and the NYCHRL is the same. *See Citroner v. Progressive Cas. Ins. Co.*, 208 F. Supp. 2d 328, 339 (E.D.N.Y. 2002) (citing *Whidbee v. Garzarelli Food Specialties,*

*Inc.*, 23 F.3d 62, 69 (2d Cir. 2000)). Under that standard, a plaintiff must show "that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his or] her employment were thereby altered." *Alfano*, 294 F.3d at 373. "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Whether a hostile environment exists is to be determined "by looking at all the circumstances." *Harris*, 510 U.S. at 23. "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

"In order to meet his [or her] burden, the plaintiff must show 'more than a few isolated incidents of racial enmity,'" *Williams v. County of Westchester*, 171 F.3d 98, 100-01 (2d Cir. 1999) (quoting *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir.1986)); rather, "'there must be a steady barrage of opprobrious racial comments' . . . ; evidence solely of 'sporadic racial slurs' does not suffice." *Id.* at 101 (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)).

Robinson has demonstrated, at most, that Blanchflower made two racially offensive comments, required Robinson and another black welder to attend additional training, and assigned Robinson and two others to work on an undesirable assignment. This last incident does not appear to be racially motivated, as two other workers, one black

13

and one white, were also given the assignment; even including it, however, the evidence does not rise to the level of a racially hostile environment.

None of the incidents was accompanied by physical threats or humiliation, and none interfered with Robinson's work performance. Moreover, Robinson has shown only "a few isolated incidents of racial enmity," *Snell*, 782 F.2d at 1103, of the type regularly held to be insufficiently severe or pervasive to constitute a hostile work environment. *See, e.g., Francis v. Chemical Banking Corp.*, 62 F. Supp. 2d 948, 959 (E.D.N.Y. 1999) (granting summary judgment where plaintiff "described only four specific incidents involving racial comments, as opposed to a 'steady barrage of opprobrious racial comments'" (quoting *Schwapp*, 118 F.3d at 110)), *aff'd*, 213 F.3d 626 (2d Cir. 2000) (table); *Arroyo v. WestLB Admin., Inc.*, 54 F. Supp. 2d 224, 230 (S.D.N.Y. 1999) (granting summary judgment where, "[a]t the most, [plaintiff] has identified a total of approximately five or six incidents of racial animosity spanning over twenty-five months"), *aff'd*, 213 F.3d 625 (2d Cir. 2000) (table).

In sum, even taken in the light most favorable to Robinson, the evidence is insufficient to demonstrate that he was subjected to a hostile work environment; therefore, KeySpan is entitled to summary judgment on that claim.

## CONCLUSION

KeySpan's motion for summary judgment is granted in its entirety and Robinson's complaint is dismissed.

FREDERIC BLOCK
United States Senior District Judge

Brooklyn, New York
November 9, 2005

14